THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BARRY C. PHELPS, Defendant-Appellant.

Fifth District   No. 77-46

Opinion filed December 20, 1978.

Ralph D. Glenn, of Glenn & Logue, of Mattoon, for appellant.

William J. Scott, Attorney General, of Chicago, Raymond W. McCamy, State's Attorney, of Robinson, and William R. Strange, State's Attorney, of Lawrenceville (Donald B. Mackay and Michael I. Santow, Assistant Attorneys General, and Bruce Loscher and Tracy Resch, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HICKMAN delivered the opinion of the court:

Defendant-Appellant, Barry C. Phelps, an attorney engaged in the venture capital business, was acquitted of theft charges but convicted of eight charges of violating the Illinois Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 1 *et seq.*) after a bench trial in the Circuit Court of Wayne County.[1] Defendant was sentenced to pay a fine and serve a period of probation. He appeals from the convictions, raising numerous issues.

Although the transcript of the testimony at trial takes up several volumes, the facts of the case are relatively simple and in large part uncontradicted. In 1972, defendant obtained controlling interest in two corporations: Water Securities Company (hereinafter referred to as Water) and Eastern Illinois Water Company (hereinafter referred to as Eastern). Eastern had as its principal function the furnishing of water to the cities of Lawrenceville and Palestine, Illinois. Water was a nonoperating holding company and had investments in companies other than Eastern. Eastern was the wholly owned subsidiary of Water. Defendant was chairman of the board and chief executive officer of both companies.

In 1973 and 1974, defendant arranged for loans in an aggregate amount exceeding $1 million to be made to Eastern by various Illinois banks. The money was then transferred to Water. All of the loans were evidenced by promissory notes with maturity dates of less than one year. No approval of the Illinois Commerce Commission was asked for or obtained for the transfers from Eastern to Water.

So far as pertinent here, the indictments charged that the defendant violated certain provisions of the Illinois Public Utilities Act by knowingly arranging for the transfer of funds from Eastern to Water without filing for or obtaining the consent of the Illinois Commerce Commission, and by knowingly causing to be issued notes of indebtedness of the credit of Eastern without obtaining Illinois Commerce Commission approval and thereafter applying the proceeds of the notes for an improper purpose.

A public utility is a private enterprise clothed with the public interest. One who devotes his property to such a use grants to the public an interest

---

[1] The original indictment was rendered by the Crawford County grand jury. Defendant's subsequent motion for change of venue was granted, and the place of trial was changed to Wayne County. The defendant stipulated to simultaneous trial in Wayne County of subsequent charges filed in Lawrence County.

in that use and must submit to public regulation for the common good. By statute, the Illinois Commerce Commission has the duty to keep informed as to the conduct of business by public utilities and their compliance with the law. As section 20 of the Public Utilities Act states:

"The power of public utilities to issue stocks, stock certificates, bonds, notes and other evidences of indebtedness and to create liens on their property is a special privilege, the right of supervision, regulation, restriction and control of which is and shall continue to be vested in the State, and such power shall be exercised by the Commission hereby created according to the provisions of this Act and under such rules and regulations as the Commission may prescribe." Ill. Rev. Stat. 1975, ch. 111 2/3, par. 20.

As our supreme court stated in *United Airlines, Inc. v. Illinois Commerce Com.*, 32 Ill. 2d 516, 522, 207 N.E.2d 433, 436 (1965):

"* * * Service to the public is the very reason for the existence of a public utility. The legislature, as the representative of the public, must necessarily concern itself with the continued financial responsibility and ability of the utility to render its service, and must likewise insure that those who operate it do not 'lead it into paths of ruin.' (*German-American Coffee Co. v. Diehl*, 216 N.Y. 57, 109 N.E. 875, 877.)"

In order to insure the continued financial responsibility of public utilities, the legislature has granted to the Illinois Commerce Commission the power of oversight of transactions between utilities and certain "affiliated interests" as defined in section 8a of the Public Utilities Act. It is undisputed that Water is an affiliated interest of Eastern as defined in the Act. Section 8a(3) of the Act states in pertinent part:

"No * * * financial or similar contract and no contract or arrangement for the purchase, sale, lease or exchange of any property or for the furnishing of any service, property or thing, hereafter made with any affiliated interest * * * shall be effective unless it has first been filed with and consented to by the Commission. The Commission may condition such approval in such manner as it may deem necessary to safeguard the public interest. * * * Every contract or arrangement not consented to or excepted by the Commission as provided for in this section is void." Ill. Rev. Stat. 1975, ch. 111 2/3, par. 8a(3).

Section 77 of the Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 81) provides in pertinent part:

"Every person who, either individually, or acting as an officer, agent, or employee of a public utility or of a corporation other than a public utility, violates or fails to comply with any provision of

this Act, * * * or who procures, aids or abets any public utility in its violation of this Act or in its failure to obey, observe or comply with this Act * * * in a case in which a penalty is not otherwise provided for in this Act, is guilty of a Class A misdemeanor."

■■ Defendant argues on appeal that section 8a(3) does not prohibit anything, but merely makes certain transactions void. Thus, the argument goes, defendant could not have failed to comply with that section, and therefore could not be punished under section 77. We cannot agree. It is manifest that the arrangement between Eastern and Water is prohibited by section 8a(3), and that defendant failed to comply with that provision of the Act. To hold as defendant would have us that the legislature did not intend to prohibit such a transaction, would be to sanction conduct clearly intended to be prohibited by the Act. This we cannot and will not do.

Another provision of the Act of which defendant was convicted of violating provides in pertinent part:

"No public utility may use, appropriate, or divert any of its moneys, property or other resources in or to any business or enterprise which is not, prior to such use, appropriation or diversion essentially and directly connected with or a proper and necessary department or division of the business of such public utility * * *." Ill. Rev. Stat. 1975, ch. 111 2/3, par. 27(g).

■■ Defendant further argues that he did not violate this section because the transfers of funds from Eastern to Water were from a wholly owned subsidiary to its parent company, which should be considered a business essentially and directly connected with the business of the utility. This contention cannot be upheld. Water was engaged in investments, many of them highly speculative, which had absolutely no connection with the business of Eastern. To hold as defendant would have us, again, would completely contradict the provisions of the Act, and nullify its stated protection of the public.

■■ Defendant also contends that the offenses charged in two of the Crawford County counts were barred by the statute of limitations. We agree with the court below, however, that there was ample evidence before it to conclude that some of the acts charged did occur within the statutory period. Therefore this contention must fail.

Defendant next attacks his conviction of six counts of violating section 21 of the Act, and the trial court's application of section 25 of the Act as the punishment provision for section 21 violations. Section 21 provides in pertinent part:

"A public utility may issue notes, for proper purposes, and not in violation of any provision of this Act or any other Act, payable at periods of not more than 12 months after the date of issuance of the same, without the consent of the commission * * *." Ill. Rev. Stat. 1975, ch. 111 2/3, par. 21.

Section 25 provides in pertinent part:

"Every officer, agent or employee of a public utility, and every other person who knowingly authorizes, directs, issues or executes, causes to be issued or executed, or aids in the issue or execution of any * * * note or other evidence of indebtedness * * * contrary to the provisions of this Act * * * or who, with knowledge that any * * * note or other evidence of indebtedness, has been issued or executed in violation of any of the provisions of this Act, negotiates, or causes the same to be negotiated, shall be guilty of a Class 3 felony." Ill. Rev. Stat. 1975, ch. 111 2/3, par. 25.

■■ Defendant argues that "proper purposes" is nowhere defined, and therefore he cannot be convicted under section 21. We cannot agree. The intent of the quoted portion of section 21 is to permit a public utility to obtain short term financing without going through proceedings before the Commission when money is needed for the proper purposes of the utility. Here, it is overwhelmingly clear that the notes issued by Eastern were not made for *any* purpose of that corporation, but were made solely for the purposes of Water. We think that the defendant causing these notes to be issued for these improper purposes was clearly a violation of section 21 punishable as a Class 3 felony under section 25.

■■ Defendant further urges that the counts of the indictments charging section 21 violations were insufficient, and should have been dismissed on motion, because they failed to allege that the notes were payable in less than 12 months, and that the notes were made for an improper purpose. We hold, however, that these charges were sufficient to apprise the defendant of the charges against him, and that they complied with section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—3). The fact that the charges used the words "for purposes unauthorized by law" rather than "for improper purposes" is, we think, insufficient to invalidate the charges.

■■ Defendant further contends that the court below erred in concluding that his actual knowledge that his conduct violated the Public Utilities Act is not an essential element of the offenses charged. Again, we must disagree. Section 4—3(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 4—3(c)) provides that "Knowledge that certain conduct constitutes an offense, or knowledge of the existence, meaning, or application of the statute defining an offense, is not an element of the offense unless the statute clearly defines it as such." It is clear from the proof at trial that the defendant knowingly caused the debts in question to be issued contrary to provisions of the Act. No more is required under our law.

■■ Finally, defendant contends that sections 8a(3), 21, and 27(g) of the Public Utilities Act are unconstitutionally vague and overbroad, in that the "scope of the power permitted officials by these Sections is so broad

that the exercise of constitutionally protected conduct depends on the subjective views of such officials as to the propriety of the conduct attempted to be prohibited." We cannot agree. Section 8a(3) makes it clear that no such contract or arrangement shall be entered into with an affiliated interest without the consent of the commission. Section 21 makes it clear that short-term notes may only be issued without the consent of the commission for proper purposes and not in violation of law. Section 27(g) makes it clear that commission approval is required before a utility may divert any of its resources to any other enterprise that is not essentially and directly connected with the business of the utility. We think that each of these statutes meets the constitutional test in their "language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Jordan v. De George*, 341 U.S. 223, 231-32, 95 L. Ed. 886, 892, 71 S. Ct. 703, 708 (1951); *Ceen v. Checker Taxi Co.*, 42 Ill. App. 3d 93, 355 N.E.2d 628 (1st Dist. 1976).

For the foregoing reasons, the judgment of the Circuit Court of Wayne County is affirmed.

Affirmed.

JONES and KARNS, JJ., concur.