E. LAWRENCE YOUNG, JR., *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF GLEN ELLYN *et al.*, Defendants-Appellants.—BROWNING FERRIS INDUSTRIES, INC., Plaintiff-Appellee, *v.* THE VILLAGE OF GLEN EL-LYN *et al.*, Defendants-Appellants.

Second District Nos. 82—871, 82—881 cons.

Opinion filed December 30, 1983.

Huck & Walsh, of Wheaton, for appellant Village of Glen Ellyn.

John J. O'Toole and John R. Fielding, both of Chicago, for appellant Theta Systems, Inc.

Thomas L. Johnson, of Wheaton, for appellee Browning Ferris Industries, Inc.

John F. Garrow and Alfred E. Woodward, both of Rathje, Woodward, Dyer & Burt, of Wheaton, for other appellees.

JUSTICE NASH delivered the opinion of the court:

Defendants, the village of Glen Ellyn and Laidlaw Waste Systems, Inc., appeal from a summary judgment entered in favor of plaintiffs, E. Lawrence Young, Jr., *et al.* and Browning Ferris Industries of Illinois, Inc., declaring that a contract for garbage removal entered into between the village and Laidlaw was void and enjoining its performance.

The primary question presented by this appeal is whether garbage collection is a utility service excluded from competitive bidding requirements within the context of an ordinance of the village.

In September 1980, the board of trustees of the village decided to solicit bids from interested parties for the award of an exclusive contract for collection of residential refuse within the village. It caused

bid packages to be sent to 18 or 20 scavenger companies for which bids were requested on several alternate options, including both a limited and full service basis. Bidders were also requested to submit rates for alternate terms extending over both a 2½-year period and also for a five year period. The village expressly reserved the right to determine which level of service and time period would be accepted and a contract awarded to the successful bidder.

In October 1980, the village held a prebid conference with interested bidders who were advised it reserved the right to reject any or all bids and that, depending upon the bid options which it accepted, the contract entered with the successful bidder would be modified to meet the type of service selected by the village.

The village eventually received four bids relating to the unlimited garbage collection service option sought by it, and which it ultimately selected, as follows:

| | Curb | Rear Door |
|---|---|---|
| Stern | $ 7.56 | $10.56 |
| Theta (now Laidlaw) | 6.82 | 10.41 |
| Browning Ferris | 8.50 | 15.32 |
| Molenhouse | 10.00 | 11.10 |

A public information meeting was held December 15 at which the garbage collection options were discussed and the Village Board of Trustees met on January 12, 1981, and adopted a resolution awarding the garbage collection contract to Laidlaw (the low bidder) under the full-service option. The resolution also set forth a formula for adjustment of the rate after the initial 2½-year contract period and the terms of the performance bond were fixed.

Prior to adoption of the resolution accepting Laidlaw's bid the trustees debated, with much disagreement, whether the contract should be awarded to Browning Ferris (third lowest bidder) because it had been serving a majority of the village residents through individual contracts with them under the previous licensing system then in operation. A tie vote of the six village trustees was resolved by the vote of the village president to award the contract to Laidlaw. The final contract was entered between the village and Laidlaw on January 26, 1981, in which several modifications of terms were agreed upon between them which were considered by the trustees to be necessary under the unlimited service collection option chosen.

Declaratory judgment actions were commenced by plaintiffs, Young *et al.*, as taxpayers of the village, and by Browning Ferris, as an unsuccessful bidder for the contract. The cases were consolidated by the trial court and it granted a motion for summary judgment in

which all plaintiffs joined. The trial court found, *inter alia*, that section 1—10—1 of chapter 10 of the Village Code of Glen Ellyn required that the garbage collection contract be let only by competitive bidding and, while the village did seek such bids, material alterations in the terms of the contract which was thereafter entered from those upon which bids were sought invalidated the contract.

Neither defendant argues on appeal that plaintiffs Young *et al.*, as taxpayers of the village, lack standing to seek the declaratory and injunctive relief sought in this action; however, Laidlaw challenges the right of Browning Ferris to do so as an unsuccessful bidder on the contract and we will consider that issue first.

■■■ In order to have standing in an action for declaratory relief a party must be interested in the controversy to the extent that the party has a personal claim, status or right which is capable of being affected and the dispute must touch the legal relations of parties who are adverse to one another. (*Allen v. Love* (1983), 112 Ill. App. 3d 338, 340-41, 445 N.E.2d 514.) It has been held under these standards that an unsuccessful bidder for a public contract has standing to bring an action against a municipality and the successful bidder challenging the award. (*Stanley Magic-Door, Inc. v. City of Chicago* (1979), 74 Ill. App. 3d 595, 597, 393 N.E.2d 535; see *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972, 387 N.E.2d 785; *Mohr v. City of Chicago* (1904), 114 Ill. App. 283.) We conclude Browning Ferris was authorized to bring its action.

We consider next defendant's contention that summary judgment was erroneously granted to plaintiffs as the village was not required by its ordinance to let the garbage collection contract under the competitive bidding provisions of the ordinance, as was determined by the trial court. The village argues that although it solicited bids for this purpose, it may reject any or all of them and negotiate a contract with the party of its choice.

Section 1—10—1 of chapter 10 of the Village Code provides:

"All purchase orders or contracts for labor, services, or work or the purchase of personal property, materials, equipment or supplies involving amounts in excess of $2,500 made by or on behalf of the Village of GLEN ELLYN, shall be let by competitive bidding after advertisement to the lowest bidder. *Contracts which by their nature are not adapted to award by competitive bidding, as for professional services or utility services are excluded.*" (Emphasis added.)

■■ We note first that the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 1—1—1 *et seq.*) does not require a village to submit

a garbage collection contract to a competitive bidding procedure. (See Ill. Rev. Stat. 1981, ch. 24, par. 11—19—1; *Strub v. Village of Deerfield* (1960), 19 Ill. 2d 401, 402-03, 167 N.E.2d 178.) A local ordinance may, however, impose more rigorous or definite regulations in addition to those enacted by the State legislature so long as they do not conflict with the statute. *Chicago-Midwest Meat Association v. City of Evanston* (1981), 96 Ill. App. 3d 966, 969-70, 422 N.E.2d 205; *Jones v. City of Chicago* (1952), 348 Ill. App. 310, 316, 108 N.E.2d 802.

The village in this case has adopted a competitive bidding ordinance which requires it to let certain of its contracts to the lowest bidder after competitive bidding. Expressly excepted from the constraints of that ordinance, however, are "contracts which by their nature are not adapted to award by competitive bidding, as for professional services or utility services are excluded." Thus, we must determine whether an exclusive contract for the collection of garbage within the village constitutes a contract for utility services within the meaning of its competitive bidding ordinance and is thus excluded from its terms, as argued by defendants.

If, in this case, the village was bound by the term of its ordinance to let the garbage collection contract only on a competitive bidding basis and in accordance with the terms of its bidding proposal, as the trial court found, then, as also determined below, changes or modifications of the terms of the contract entered into with the successful bidder could act to invalidate the contract. (See, *e.g., City of Chicago v. Mohr* (1905), 216 Ill. 320, 328, 74 N.E. 1056; *Leo Michuda & Son Co. v. Metropolitan Sanitary District* (1981), 97 Ill. App. 3d 340, 344, 422 N.E.2d 1078; *Rosetti Contracting Co. v. Brennan* (7th Cir. 1975), 508 F.2d 1039; 10 E. McQuillan, Municipal Corporations sec. 29.72, at 392 (3d ed. 1981 & 1982 Supp.).) Modifications in such a contract which were, in fact, contemplated in the original bid proposal will not, however, act to invalidate the contract. (See *M.A. Lombard & Son Co. v. Public Building Com.* (1981), 101 Ill. App. 3d 514, 521, 428 N.E.2d 889.) If, on the other hand, under the ordinance in question the garbage collection contract disputed by the parties is a utility service and thus excluded from the requirements of the bidding ordinance, modifications or variations between the terms of the bid proposal and the contract then negotiated by the parties would not cause its invalidity and subject it to the attack made by plaintiffs here. *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972, 983-84, 387 N.E.2d 785, 793; *Urban Products International, Ltd., v. National Disposal Service* (1975), 32 Ill. App. 3d 299, 301-02, 336 N.E.2d 138, 141-42; 10 E. McQuillan, Munic-

ipal Corporations sec. 29.37, at 324 (3d ed. 1981 & 1982 Supp.).

When construing a municipal ordinance its language must be given its plain and ordinary or commonly accepted meaning unless to do so would defeat the intent of the ordinance. (*Scott v. Rochford* (1979), 77 Ill. 2d 507, 512, 397 N.E.2d 801; *City of Chicago v. Pennsylvania R.R. Co.* (1968), 41 Ill. 2d 245, 251, 242 N.E.2d 152.) The construction of a municipal ordinance is a matter of law. *Oberman v. Byrne* (1983), 112 Ill. App. 3d 155, 160, 445 N.E.2d 374.

A public utility has been defined as a private enterprise clothed with the public interest; one who devotes his property to such a use grants to the public an interest in that use and must submit to public regulation for the common good. (*People v. Phelps* (1978), 67 Ill. App. 3d 976, 978-79, 385 N.E.2d 738, 741.) A public utility is a business organization regularly supplying the public with some commodity or service, and a distinguishing characteristic of a public utility is a devotion of private property by the owner to service useful to the public which has a right to demand it so long as it is continued with reasonable efficiency under proper charges. (*City of Wichita Falls v. Kemp Hotel Operating Co.* (Tex. Civ. App. 1942), 162 S.W.2d 150, 152-53.) Black's Law Dictionary defines a public utility as "[a] privately owned and operated business whose services are so essential to the general public as to justify the grant of special franchises for the use of public property or of the right of eminent domain, in consideration of which the owners must serve all persons who apply, without discrimination." (Black's Law Dictionary 1108-09 (5th ed. 1979); see also *Commonwealth v. Lafferty* (1967), 426 Pa. 541, 233 A.2d 256.) This definition of a public utility has been applied in other jurisdictions to contracts for the exclusive collection of garbage within a municipality. *City of Wichita Falls v. Kemp Hotel Operating Co.* (Tex. Civ. App. 1942), 162 S.W.2d 150; see also *Schlagel v. Hoelsken* (1967), 162 Colo. 142, 145-46, 425 P.2d 39, 41; *County of Bergen v. Department of Public Utilities* (1971), 117 N.J. Super. 304, 284 A.2d 543; 12 E. McQuillan, Municipal Corporations sec. 34.08, at 24 (3d ed. 1970 & 1982 Supp.).[1]

We conclude that the contract for the exclusive collection of garbage within the village was for utility services within the meaning of the village ordinance. Our conclusion finds support in the actions of

---

[1]Although the statutes relating to the jurisdiction of the Illinois Commerce Commission define a "public utility" more narrowly (see Ill. Rev. Stat. 1981, ch. 111⅔, par. 10.3), we do not consider that to be conclusive for the term as used in the village ordinance.

the village trustees during their discussion of the contract in the January 1981 meeting. The trustees did not feel compelled by the ordinance to necessarily award the garbage collection contract to the lowest bidder. Rather, there was much debate as to whether or not the contract should have been awarded to Browning Ferris, the third lowest bidder. The final vote taken by the trustees showed three trustees voting in favor of awarding the contract to Laidlaw and three trustees voting to award the contract to Browning Ferris. The tie was broken by the vote of the village president for the lowest bidder, Laidlaw. It seems apparent the village trustees did not consider the bidding ordinance to control the letting of the contract in question and considered it to be excluded from the requirements of the ordinance.

 As the village was thus not required to solicit competitive bids for the letting of this contract, it was allowed by law to award the contract to any bidder it considered responsible and on such terms as they may have agreed. (See *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972, 983-84, 387 N.E.2d 785, 793; *Urban Products International Ltd. v. National Disposal Service* (1975), 32 Ill. App. 3d 299, 301-02, 336 N.E.2d 138, 141-42; 10 E. McQuillan, Municipal Corporations sec. 29.37, at 324 (3d ed. 1981 & 1982 Supp.).) The resolution of this issue is dispositive, requiring reversal of the summary judgment entered below, and we need not therefore consider other questions raised by appellants.

Accordingly, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

SEIDENFELD, P.J., and VAN DEUSEN, J., concur.