# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***People ex rel. Department of Labor v. E.R.H. Enterprises, Inc.*, 2012 IL App (4th) 110943**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS ex rel. THE DEPARTMENT OF LABOR, Plaintiff-Appellee, v. E.R.H. ENTERPRISES, INC., Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0943 |
| Filed | September 7, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant, a private corporation operating under an agreement with a village to maintain and operate the village's water and sewer systems for the use of its citizens, was a "public utility" that was exempt from the requirements of the Prevailing Wage Act, and the trial court erred in requiring defendant to comply with the Department of Labor's subpoena filed pursuant to the Act. |
| Decision Under Review | Appeal from the Circuit Court of Piatt County, No. 08-MR-14; the Hon. John P. Shonkwiler, Judge, presiding. |
| Judgment | Reversed. |

| | |
|---|---|
| Counsel on<br>Appeal | David K. Cox (argued), of Monticello, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Ann C. Maskaleris and John P. Schmidt (argued), Assistant Attorneys General, of counsel) for appellee. |
| Panel | PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion.<br><br>Justices Steigmann and McCullough concurred in the judgment and opinion. |

**OPINION**

¶ 1      In December 2008, plaintiff, the Department of Labor (Labor Department), filed a complaint for adjudication of civil contempt against defendant, E.R.H. Enterprises, Inc., for its failure to comply with the Labor Department's May 2008 subpoena *duces tecum* brought under section 10 of the Prevailing Wage Act (Wage Act) (820 ILCS 130/10 (West 2008)). The subpoena related to the repair of water main leaks that defendant had done on the water infrastructure owned by the Village of Bement (Village). Defendant objected claiming (1) it was exempt from the Wage Act because it was a public utility, (2) the subpoena was not properly served, and (3) the subpoena was too broad as it was not limited to a specific project or temporal scope. In August 2010, the Piatt County circuit court found the subpoena was properly served and defendant was not a public utility. The court ordered defendant to provide the Labor Department with the documents sought by the subpoena for the period of May 23, 2003, to May 23, 2008, within 30 days of the order. In September 2010, defendant filed a motion to reconsider and later a request to clarify the basis in law for the grant of the Labor Department's complaint. In January 2011, the court entered an order declaring it would file an amended order that would supercede its August 2010 order. The next day, the court filed an amended order, which "affirmed" its prior order and provided additional detail for its ruling. Defendant filed a motion to reconsider the amended order. In September 2011, the court entered an "amended memorandum order," denying defendant's motion to reconsider.

¶ 2      Defendant appeals, asserting (1) it is exempt from the Wage Act because (a) it is a public utility, (b) it did not perform public works, and (c) it is not paid from public funds; (2) the amended order and memorandum order were not properly entered; and (3) the Labor Department's subpoena was improperly served and procedurally deficient. We reverse.

¶ 3                                I. BACKGROUND

¶ 4      On May 23, 2008, the Labor Department issued a subpoena *duces tecum* to defendant's

attorney, Charles Morgan, requiring him to appear before the Labor Department on June 10, 2008, with the employment records delineated in the subpoena. The subpoena noted an investigation was being done under the Wage Act regarding defendant's repair of water main leaks for the Village. In a June 10, 2008, letter, the Labor Department extended the date for production of the documents to July 2, 2008, because Morgan had not received the subpoena until June 9, 2010. The letter also noted the Wage Act's public-utility exemption did not apply to defendant because the Village owned the system. In September 2008, the Attorney General's office sent defendant a letter, requesting the documents be submitted within 14 days or it would file a lawsuit.

¶ 5    On December 17, 2008, the Labor Department filed a verified complaint for adjudication of civil contempt against defendant, seeking enforcement of its subpoena under section 10 of the Wage Act (820 ILCS 130/10 (West 2008)). In February 2009, defendant filed an answer to the complaint and raised several defenses. Defendant asserted it was a public utility and thus exempt from the Wage Act. It also alleged the subpoena was procedurally deficient because (1) it was not served on defendant or its custodian of records, (2) it was not served in a timely manner, and (3) the records requested were not limited to a specific project or temporal scope. Defendant also noted it had served the Labor Department with a motion to quash the subpoena, which had not been addressed. In May 2009, the Labor Department filed a response to defendant's defenses, denying the allegations, except for the assertion the subpoena was not limited to a specific project or temporal scope and the allegation it had not addressed defendant's motion to quash the subpoena.

¶ 6    In November 2009, the trial court ordered the parties to file briefs. Defendant's brief in opposition to the complaint asserted (1) it was exempt from the Wage Act as a public utility, (2) it was exempt from the Wage Act because it was not in the construction business, and (3) the subpoena is unenforceable because it was not served (a) on the proper person and (b) in a timely manner. Attached to defendant's brief was (1) the subpoena, (2) a document showing when the subpoena was delivered, (3) defendant's motion to quash the subpoena that was filed with the Labor Department, and (4) the agreement between defendant and the Village (Agreement). The Agreement was dated May 11, 2004, and was in effect for five years. It had 25 paragraphs delineating the responsibilities of defendant and the Village as to the Village's potable water facility and water infrastructure that served the Village. Under the Agreement, defendant was paid $129,792 per year in monthly installments from the water operation and maintenance fund account.

¶ 7    The Labor Department's brief in support of the subpoena alleged (1) defendant was not a public utility, (2) defendant did perform public works, and (3) the subpoena did comply with procedural rules. Attached to its brief was (1) the Agreement; (2) an Illinois Department of Public Health certificate awarded to the Village's water department; (3) defendant's amended objections to the Labor Department's first request for the production of documents; (4) the subpoena; (5) a May 21, 2008, letter from Morgan to the Labor Department; (6) the September 29, 2008, letter from the Attorney General's office to defendant; and (7) the Labor Department's June 10, 2008, extension letter. Defendant filed a reply brief, to which it attached the following: (1) House Resolution No. 692 of the 94th General Assembly; (2) an undated letter written by Charles Donahue, Solicitor of Labor, United States Department of

Labor, to C. Franklin Daniels, assistant commissioner of multifamily housing operations of the Federal Housing Administration; and (3) the May 21, 2008, letter from Morgan to the Labor Department.

¶ 8 On August 11, 2010, the trial court held a hearing on the complaint, at which the parties only argued the issues. The court did not hear any testimony. After hearing the parties' arguments, the court found defendant was not a public utility and had to comply with the subpoena. The court asked the assistant Attorney General to prepare a written order, which was filed on August 25, 2010.

¶ 9 On September 23, 2010, defendant filed a motion to reconsider, to which it attached (1) the affidavit of Mike Hite, the Village's treasurer, and (2) the Agreement. The Labor Department filed a brief in opposition to the motion that also attached (1) Hite's affidavit, (2) the Agreement, and (3) Morgan's May 2008 letter. In October 2010, a new attorney entered his appearance on defendant's behalf and later filed a request to clarify the basis in law for the docket order that granted the Labor Department's complaint. The Labor Department again opposed the request. In January 2011, the trial court entered a written order, indicating it would file an amended order that would supercede its August 25, 2010, order. The January 2011 order noted that, when the amended order was filed, defendant's motion to reconsider and request for clarification would be considered withdrawn and defendant could file an amended motion to reconsider or an appeal. Additionally, enforcement of the amended order would be stayed pending ruling on any such amended motion to reconsider or appeal.

¶ 10 On February 11, 2011, the trial court entered its amended order. In support of its finding defendant was not a public utility, the court noted the following: (1) the Village owned the potable water facility and water infrastructure that serves the Village and was responsible for its maintenance and operation; (2) the Village, not defendant, was recognized for the fluoridation of the Village's water; (3) the Village contracted out some but not all of its responsibilities to defendant; (4) the Village, not defendant, had the duty to serve the public and treat all persons alike; (5) defendant was simply an outside contractor that assisted the Village with supplying water to the public; (6) defendant did not charge the public for its services; and (7) defendant was not regulated by the Illinois Commerce Commission or any other state agency. The amended order "affirmed" the original order and required defendant to provide the documents sought by the Labor Department within 30 days of the amended order. The court did limit the documents temporally to those created from May 23, 2003, to May 23, 2008. The amended order also provided its enforcement would be stayed in the event defendant filed an amended motion to reconsider and/or an appeal.

¶ 11 At defendant's request, the trial court granted defendant until April 1, 2011, to file a motion to reconsider. On April 1, 2011, defendant filed a motion to reconsider the February 2011 amended order. The Labor Department filed a brief opposing the motion. On September 23, 2011, the trial court denied defendant's motion to reconsider.

¶ 12 On October 18, 2011, defendant filed a timely notice of appeal in compliance with Illinois Supreme Court Rule 303 (eff. May 30, 2008). Thus, this court has jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 13                                    II. ANALYSIS

¶ 14        Defendant raises several arguments why the trial court's ruling was erroneous, including
the inapplicability of the Wage Act and the lack of proper service of the subpoena. However,
the issue of whether defendant is a public utility is dispositive of this appeal. The public-
utility issue presents a matter of statutory construction, and thus our review is *de novo*.
*Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 15, 965 N.E.2d 1103.

¶ 15        Our supreme court has explained statutory construction as follows:

            "The primary rule of statutory interpretation and construction, to which all other
    canons and rules are subordinate, is to ascertain and effectuate the true intent and
    meaning of the legislature. [Citation.] In interpreting a statute, a court must give the
    legislative language its plain and ordinary meaning. [Citation.] If the language of the
    statute is plain, clear, and unambiguous, and if the legislative intent can be ascertained
    therefrom, it must prevail and will be given effect by the courts without resorting to other
    aids for construction. [Citation.] Also, the statute should be evaluated as a whole; each
    provision should be construed in connection with every other section. [Citation.] Statutes
    should be construed, if possible, so that no term is rendered superfluous or meaningless.
    [Citation.]" *Wisnasky-Bettorf*, 2012 IL 111253, ¶ 16, 965 N.E.2d 1103.

¶ 16        Section 1 of the Wage Act (820 ILCS 130/1 (West 2008)) declares the following:

            "It is the policy of the State of Illinois that a wage of no less than the general prevailing
    hourly rate as paid for work of a similar character in the locality in which the work is
    performed, shall be paid to all laborers, workers and mechanics employed by or on behalf
    of any and all public bodies engaged in public works."

    Section 2 of the Wage Act (820 ILCS 130/2 (West 2008)) declares the Act "applies to the
    wages of laborers, mechanics and other workers employed in any public works, as hereinafter
    defined, by any public body and to anyone under contracts for public works." The Wage Act
    defines "public works," in pertinent part, as follows:

            "all fixed works constructed by any public body, *other than work done directly by any
    public utility company*, whether or not done under public supervision or direction, or paid
    for wholly or in part out of public funds." (Emphasis added.) 820 ILCS 130/2 (West
    2008).

¶ 17        Here, the parties disagree as to whether defendant is a public utility and thus exempt from
the Wage Act. The Wage Act does not define "public utility." Section 3-105 of the Public
Utilities Act (Utility Act) (220 ILCS 5/3-105 (West 2008)) does define the term and
provides, in pertinent part, the following:

            "(a) 'Public utility' means and includes, except where otherwise expressly provided
    in this Section, every corporation, company, limited liability company, association, joint
    stock company or association, firm, partnership or individual, their lessees, trustees, or
    receivers appointed by any court whatsoever that owns, controls, operates or manages,
    within this State, directly or indirectly, for public use, any plant, equipment or property
    used or to be used for or in connection with, or owns or controls any franchise, license,
    permit or right to engage in:

                (1) the production, storage, transmission, sale, delivery or furnishing of heat,

cold, power, electricity, water, or light, except when used solely for communications purposes[.]"

¶ 18    Defendant contends it meets the definition of "public utility" contained in section 3-105(a) as it is a private corporation that maintains and operates the water and sewer systems owned by the Village for the public use of its citizens. Defendant further raises several arguments why the Utility Act's definition must apply to the Wage Act. In its brief, the Labor Department does not argue defendant fails to meet a specific provision of the Utility Act's definition but rather asserts (1) that definition does not necessarily control what the term means in the Wage Act, (2) an entity must still exhibit characteristics of a public utility as set forth in the case law to meet the definition of a "public utility" under the Utility Act, and (3) defendant was not regulated by the Illinois Commerce Commission.

¶ 19    We agree with the Labor Department the definition of section 3-105(a) does not necessarily define "public utility" as defined in the Wage Act. "There is a limit to the use of a definition from another statute because words must be construed in the context in which they are presented." *In re Application for Tax Deed*, 311 Ill. App. 3d 440, 444, 723 N.E.2d 1186, 1190 (2000); see also *Young v. Village of Glen Ellyn*, 120 Ill. App. 3d 692, 697 n.1, 458 N.E.2d 1137, 1141 n.1 (1983) (noting the court did not have to apply the definition of "public utility" in statutes relating to the Illinois Commerce Commission to a village ordinance's use of the same term). Moreover, defendant has forfeited his argument based on section 6 of the Statute on Statutes (5 ILCS 70/6 (West 2008)) due to its conclusory nature and lack of sufficient analysis. See *Barth v. State Farm Fire & Casualty Co.*, 371 Ill. App. 3d 498, 507, 867 N.E.2d 1109, 1117-18 (2007). Further, the language defendant cites in *Bowes v. City of Chicago*, 3 Ill. 2d 175, 120 N.E.2d 15 (1954), is inapplicable because the legislature did not define "public utility" in the statute in which we are interpreting it and we are not dealing with two conflicting statutory provisions.

¶ 20    While application of the definition of section 3-105(a) of the Utility Act is not mandatory, the Labor Department has failed to show why it should not apply. As defendant notes, the Labor Department in providing alternative definitions of "public utility" cites cases, in which all but one addressed the Utility Act. See *Springfield Gas & Electric Co. v. City of Springfield*, 292 Ill. 236, 252, 126 N.E. 739, 746 (1920); *Peoples Energy Corp. v. Illinois Commerce Comm'n*, 142 Ill. App. 3d 917, 930, 492 N.E.2d 551, 562 (1986); *People v. Phelps*, 67 Ill. App. 3d 976, 978, 385 N.E.2d 738, 740 (1978) (where the defendant appealed his eight convictions of violating the Utility Act); *Illinois Highway Transportation Co. v. Hantel*, 323 Ill. App. 364, 375-76, 55 N.E.2d 710, 714-15 (1944). The Labor Department's citation to cases addressing the Utility Act highlights the act's relevancy to the issue before us.

¶ 21    At oral arguments, the Labor Department raised for the first time section 3-105(b)(1) of the Utility Act (220 ILCS 5/3-105(b)(1) (West 2008)), which provides that, under the Utility Act, the term "public utility" does not include public utilities that are owned by a municipal corporation and operated by a lessee or operating agent. Thus, such entities meet the definition of "public utility" but are excluded from the Utility Act's use of the term because of the utilities' status of being owned by a municipal corporation. The Labor Department stated it believed the reason for the exclusion was the existence of the waterworks provisions

of the Illinois Municipal Code (65 ILCS 5/11-24-1 to 11-151-5 (West 2008)). Defendant asserted the exclusion existed because the Illinois Environmental Protection Agency was the primary governing body and not the Illinois Commerce Commission. Regardless of the reason for the exclusion, we find no reason why the exclusion would exist in the context of the Wage Act. Accordingly, section 3-105(b)(1) of the Utility Act does not remove defendant from the definition of the "public utility" in the context of the Wage Act.

¶ 22 As to the Labor Department's argument an entity must meet the definition of "public utility" *and* exhibit characteristics of a public utility as the courts have defined and explained them, it cites *Peoples Energy Corp*. There, the issue was whether a nonoperating holding company of a public utility and a natural gas company that only sold to one customer in Illinois met the Utility Act's definition of a "public utility." *Peoples Energy Corp.*, 142 Ill. App. 3d at 924, 930, 492 N.E.2d at 558, 561. The reviewing court began its analysis by setting forth the definition of "public utility" contained in the Utility Act (Ill. Rev. Stat. 1981, ch. 111 2/3, ¶ 10.3). With regard to the natural gas company, the reviewing court's analysis shows the issue was the "public use" language of the definition, as the court found the company had only one Illinois customer, did not have to treat all customers alike, and could decline to supply service to an applicant. *Peoples Energy Corp.*, 142 Ill. App. 3d at 930-31, 492 N.E.2d at 562. Thus, the natural gas company was not a public utility because it did not meet the public-use requirement of the definition. *Peoples Energy Corp.*, 142 Ill. App. 3d at 930-31, 492 N.E.2d at 562. Accordingly, we disagree with the Labor Department that an entity must meet other requirements outside section 3-105's definition to be a "public utility" under the Utility Act.

¶ 23 The Labor Department also emphasizes the Illinois Commerce Commission has not treated or regulated defendant as a public utility. Here, the record is devoid of any contact between the Illinois Commerce Commission and defendant. Thus, this case is distinguishable from *Peoples Energy Corp.*, cited by the Labor Department, where for almost 14 years, the Illinois Commerce Commission had exercised jurisdiction over the company at issue as an affiliated interest, not as a public utility. *Peoples Energy Corp.*, 142 Ill. App. 3d at 929, 492 N.E.2d at 561. Moreover, this court has recognized a company need not be presently regulated by the Illinois Commerce Commission to be a public utility in fact. *Danville Redipage, Inc. v. Illinois Commerce Comm'n*, 87 Ill. App. 3d 787, 788, 410 N.E.2d 328, 329 (1980). "Commission certification is not a condition precedent to classification as a public utility." *Danville Redipage*, 87 Ill. App. 3d at 788, 410 N.E.2d at 329.

¶ 24 Accordingly, we find defendant has met the definition of public utility contained in section 3-105(a) of the Utility Act.

¶ 25 Even absent the Utility Act's definition, defendant meets the definition of a public utility. When a statute contains undefined terms, our supreme court has employed a dictionary to ascertain the plain and ordinary meaning of those terms. See *People v. Davison*, 233 Ill. 2d 30, 40, 906 N.E.2d 545, 551 (2009). Black's Law Dictionary provides the following definition of "public utility":

"A company that provides necessary services to the public, such as telephone lines and service, electricity, and water. • Most utilities operate as monopolies but are subject to governmental regulation. *** 2. A person, corporation, or other association that carries

-7-

on an enterprise for the accommodation of the public, the members of which are entitled as a matter of right to use the enterprises's facilities." Black's Law Dictionary 1686 (9th ed. 2009).

Merriam-Webster's Collegiate Dictionary 942 (10th ed. 2000) defines "public utility" as "a business organization (as an electric company) performing a public service and subject to special governmental regulation."

¶ 26   In this case, the trial court did not hold an evidentiary hearing. The evidence consisted of documents attached to the parties' briefs submitted before the August 2010 hearing. The primary piece of evidence was the Agreement. The Agreement shows the Village was responsible for maintaining and operating the potable water facility and water infrastructure that served the Village. Under the Agreement, defendant would maintain and operate the facility and certain segments of the infrastructure. The Agreement contained 25 numbered paragraphs and detailed what was the responsibility of defendant and what remained the responsibility of the Village. Among the things defendant had to do was meet the guidelines established by the Illinois Environmental Protection Agency and be responsible for all correspondence with the agency, including submitting reports and obtaining permits. Moreover, defendant was responsible for all testing required for the facility and distribution system and providing residents with information on how to correct any problems shown by lead and copper testing. Defendant also had to issue boil orders and install taps for new customers. It was defendant who operated and maintained the water distribution system, including repairing water-main breaks and line repairs requiring less than 20 feet of pipe. The larger repairs were the Village's responsibility as well as maintenance of the water tower. Additionally, defendant maintained the storm sewer system and the sanitary sewer system.

¶ 27   The other evidence consisted of a certificate from the Illinois Department of Public Health and Environmental Protection Agency recognizing the Village's water department for its highest standard of compliance with the Illinois fluoridation act for 2004-06. Also in evidence was an Illinois House of Representatives resolution recognizing John McBride, defendant's owner and vice president, for being named operator of the year by the Illinois Potable Water Supply Operators Association. The resolution notes McBride received the award for his work at the Village treatment facility. Moreover, in defendant's amended objections to the Labor Department's first request for the production of documents, defendant admitted no documents of communication between it and the Illinois Commerce Commission exist. However, on appeal, it notes it did submit a document from the Illinois Commerce Commission in response to the request to produce documents but that document is not included in the record on appeal.

¶ 28   The dictionary definitions do not require the company providing the public service to own the property necessary to provide the service or be the entity billing the public. Under the contract, defendant is operating and maintaining the water distribution system, except for repairs requiring more than 20 feet of pipe. Thus, defendant is the entity supplying the water to the Village citizens. The Labor Department fails to cite anything in the record in support of its assertion defendant "does not produce, provide, or supply water and its related services to the public." Further, the Labor Department fails to cite any authority supporting its claim the fact the Village retained some maintenance, some of the costs, and the billing renders

defendant not a public utility. The contract provided for defendant to operate the water distribution system and to do most of the maintenance on that system. Again, the evidence shows defendant is the one supplying the Village's citizens with water.

¶ 29 As to government regulation, the contract required defendant had to comply with the regulations of the Illinois Environmental Protection Agency and correspond with it. The fact the Village still remained the named entity with the agency does not alter the fact defendant was the party responsible to the agency since the Village remained the owner of the facility. Moreover, since defendant meets the definition of "public utility" under the Utility Act, it appears defendant should be regulated by the Illinois Commerce Commission, if it is not already (defendant argues it is, but the documentation is not included in the appellate record).

¶ 30 Moreover, the contract does not indicate defendant could treat water customers differently or refuse to serve certain ones as it was required to install taps for all new customers and to provide information to customers to correct any problems shown by lead and copper testing. Contrary to the Labor Department's arguments, the evidence does not show defendant only provided services to the Village, as defendant was required to deal with the public in certain circumstances.

¶ 31 Accordingly, we find defendant is a public utility. Since the Labor Department subpoena relates to documents regarding work directly done by defendant as a public utility, defendant is exempt from the Wage Act as provided for in section 2 of that Act (820 ILCS 130/2 (West 2008)). Since defendant is exempt from the Wage Act, the trial court erred by ordering defendant to comply with the Labor Department's subpoena. Since we have found defendant is exempt from the Wage Act, we do not address defendant's other issues.

¶ 32                                    III. CONCLUSION

¶ 33 For the reasons stated, we reverse the judgment of the Piatt County circuit court.

¶ 34 Reversed.