# Illinois Official Reports

## Supreme Court

***People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.,***
**2013 IL 115106**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* ILLINOIS DEPARTMENT OF LABOR, Appellant, v. E.R.H. ENTERPRISES, INC., Appellee. |
| Docket No. | 115106 |
| Filed | November 21, 2013 |
| Rehearing denied | January 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Prevailing Wage Act's exemption for "public utilities," without defining them, did not apply to a company that was not regulated by the Illinois Commerce Commission and that was simply an outside contractor which operated and maintained a village's potable water system and parts of its water delivery infrastructure—subpoena for documents upheld. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Piatt County, the Hon. John P. Shonkwiler, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of Chicago, of counsel), for appellant.

David K. Cox, of Monticello, for appellee.

Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    The principal issue before the court in this appeal is whether E.R.H. Enterprises, Inc. (E.R.H.), is subject to the provisions of the Prevailing Wage Act (Wage Act) (820 ILCS 130/0.01 *et seq.* (West 2008)) by reason of its contract with, and work performed on behalf of, the Village of Bement (Village). The circuit court of Piatt County answered that question in the affirmative, finding that E.R.H. did not qualify for an exemption as a "public utility company" (see 820 ILCS 130/2 (West 2008)), and thus ruling in favor of the Illinois Department of Labor. The appellate court reversed, holding that E.R.H. *does* qualify for the exemption. 2012 IL App (4th) 110943. We allowed the Department's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)), and now reverse the judgment of the appellate court.

¶ 2                    PRINCIPAL STATUTES INVOLVED

¶ 3    Section 1 of the Wage Act declares:

"It is the policy of the State of Illinois that a wage of no less than the general prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workers and mechanics employed by or on behalf of any and all public bodies engaged in public works." 820 ILCS 130/1 (West 2008).

¶ 4    Section 2 of the Wage Act defines "public works" as "all fixed works constructed by any public body, *other than work done directly by any public utility company*, whether or not done under public supervision or direction, or paid for wholly or in part out of public funds." (Emphasis added.) 820 ILCS 130/2 (West 2008). Section 2 defines "construction" as "all work on public works involving laborers, workers or mechanics," including "any maintenance,

- 2 -

repair, assembly, or disassembly work performed on equipment whether owned, leased, or rented." 820 ILCS 130/2 (West 2008).

¶ 5    Subsection (a)(1) of section 3-105 of the Public Utilities Act defines "public utility" as follows:

"(a) 'Public utility' means and includes, except where otherwise expressly provided in this Section, every corporation, company, limited liability company, association, joint stock company or association, firm, partnership or individual, their lessees, trustees, or receivers appointed by any court whatsoever that owns, controls, operates or manages, within this State, directly or indirectly, for public use, any plant, equipment or property used or to be used for or in connection with, or owns or controls any franchise, license, permit or right to engage in:

(1) the production, storage, transmission, sale, delivery or furnishing of heat, cold, power, electricity, water, or light, except when used solely for communications purposes[.]" 220 ILCS 5/3-105(a)(1) (West 2008).

Subsection (b)(1) of the Public Utilities Act excludes from the definition of "public utility" "utilities that are owned and operated by any political subdivision, public institution of higher education or municipal corporation of this State, or public utilities that are owned by such political subdivision, public institution of higher education, or municipal corporation and operated by any of its lessees or operating agents." 220 ILCS 5/3-105(b)(1) (West 2008).

¶ 6                                    BACKGROUND

¶ 7    A detailed recitation of facts can be found in the appellate court's opinion. 2012 IL App (4th) 110943, ¶¶ 3-12. For present purposes, a brief summary will suffice. Additional facts will be noted as necessary in the course of our analysis.

¶ 8    E.R.H. contracts with the Village to assist the Village in fulfilling its obligation to operate and maintain the Village's potable water facility and parts of the water delivery infrastructure. E.R.H.'s five-year contract with the Village acknowledges that "the Village is responsible for the maintenance and operation of the Potable Water facility and water infrastructure which serves the Village" and that E.R.H. "has agreed to fulfill all requirements set forth under the applicable laws and regulations for the operation of such facility and certain segments of the infrastructure."

¶ 9    Under the contract, E.R.H. helps to maintain the storm and sanitary sewer systems by removing blockages, jetting lines, cleaning basins and repairing water main breaks and lines requiring less than 20 feet of replacement pipe, while the Village is responsible for "repairs of a greater magnitude" and for restoring paving, curbs, streets and sidewalks affected by any repairs. The Village is also responsible for the maintenance, repair, upkeep, and expense of its water tower, as well as the maintenance and expense of telephone lines between the water tower and the pump station.

¶ 10    The contract further provides that the Village must purchase and furnish parts and materials for taps for new customers, with E.R.H. installing the taps. While E.R.H. must maintain fire hydrants, the Village must provide materials to replace the hydrants when

- 3 -

necessary. Though E.R.H. must keep equipment in good repair, the Village must replace equipment that does not function adequately if it is beyond repair. The Village also assumes certain costs and expenses, including the costs of capital improvements for additional equipment needed to meet revised permit requirements as well as the cost of electricity to operate any additional equipment or structures. Upon request, E.R.H. is required to submit "paperwork" to the Village to enable the Village to monitor E.R.H.'s correspondence and interaction with the Illinois Environmental Protection Agency.

¶ 11    On May 23, 2008, the Department issued a subpoena *duces tecum* to E.R.H.'s attorney, requiring him to appear on June 10, 2008, with the employment records delineated in the subpoena. The subpoena referenced an investigation being conducted under the Wage Act regarding E.R.H.'s repair of water main leaks for the Village. In a June 10, 2008, letter, the Department took the position that the Wage Act's public-utility exemption did not apply to E.R.H. because the Village owned the system.

¶ 12    In December of 2008, after attempts to secure compliance had come to naught, the Department filed a verified complaint for adjudication of civil contempt against E.R.H., seeking enforcement of its subpoena under section 10 of the Wage Act (820 ILCS 130/10 (West 2008)). In February 2009, E.R.H. filed an answer asserting, *inter alia*, that it is an exempt "public utility company."

¶ 13    In July of 2009, the Department served its first request for production of documents. The documents requested were outlined in six sentences, four of which sought "communications and/or documents" in E.R.H.'s "possession or control" that would evince communication with the Illinois Commerce Commission or other agencies that regulate public utilities, and thus "help prove or disprove" E.R.H.'s "contention that it is a public utility company." The remaining two requests sought, respectively, documents relevant to the matter under investigation, *i.e.*, "work done by Respondent's workers *** in connection with the repair of water main leaks for the Village of Bement," and documents E.R.H. intended to introduce during trial or hearing of the matter.

¶ 14    E.R.H. objected to each request "to the extent it is overbroad in temporal scope and seeks information which is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence." Further, E.R.H. objected "to the extent [each request] invades the attorney/client privilege and/or attorney-work product doctrine." E.R.H represented it would "provide non-objectionable documents *** responsive" to each request.

¶ 15    According to the Department's subsequently filed motion to compel production of the documents, the Department's "good faith attempt" to "resolve [the] discovery dispute" "produced no documents."

¶ 16    Thereafter, E.R.H. filed numerous, *amended* objections to the request for production of documents. Ultimately, E.R.H. acknowledged that it had no communications and/or documents in its possession or control that evinced contact or interaction with the Illinois Commerce Commission. E.R.H. represented that it had "produced all *** documents" responsive to the Department's requests for evidence of communications with regulatory agencies, and documents that would help prove or disprove E.R.H.'s claim that it was a public utility company. With respect to the Department's request for documents relating specifically

to work done by E.R.H.'s workers in connection with the repair of water main leaks for the Village of Bement, E.R.H. continued to object, claiming exemption from the Prevailing Wage Act. Additionally, E.R.H. objected, asserting that the discovery request was "unconstitutional because it deprives Respondent of any meaningful ability to challenge the Illinois Department of Labor's administrative authority." E.R.H.'s response to that request does not indicate that any relevant documents were produced. E.R.H. answered the Department's sixth request with the assertion that it had supplied all documents that it might produce at trial.

¶ 17    The record on appeal contains neither the documents ultimately produced nor an adequate summary of their content or nature.

¶ 18    On August 25, 2010, the circuit court, after considering the evidence produced and the arguments of the parties, found that E.R.H. was not a public utility and ruled it had to comply with the Department's subpoena. On January 7, 2011, the court, on its own motion, entered another order acknowledging E.R.H.'s pending motion to reconsider, and its request to clarify the basis in law for the court's prior docket entry, and indicated the court would enter an amended order, at which time E.R.H.'s filings would be withdrawn pursuant to agreement of the parties.

¶ 19    On February 16, 2011, the trial court entered the amended order. The court first found that the subpoena issued by the Department was properly served upon E.R.H. by mailing the subpoena to its attorney, as directed. The court then clarified its bases for finding that E.R.H. was not a public utility. In support of its determination that E.R.H was not an exempt "public utility company," the court cited the following: (1) the Village owned the potable water facility and infrastructure, and the agreement between the Village and E.R.H. specifically acknowledged that "the Village is responsible for maintenance and operation of the Potable Water Facility and water infrastructure which serves the Village"; (2) the "Village of Bement Water Department (not E.R.H.) has been recognized by the Illinois Environmental Protection Agency and the Illinois Department of Public Health for achieving the highest standard of compliance with the Illinois Fluoridation Act"; (3) the Village "has sometimes" contracted out some, but not all, of its responsibilities to E.R.H.; (4) the Village supplies the public with water and there "is no suggestion that E.R.H. charges the public for the water as would a public utility"; (5) E.R.H. was not regulated by the Illinois Commerce Commission or any other state agency. The court stated:

> "[I]t is the Village, not E.R.H., that is 'responsible for maintenance and operation of the facility and infrastructure.' It is the Village, not E.R.H., that has the duty to serve the public and treat all persons alike. The Village, by contracting out some of its responsibilities, but only some, does not transform E.R.H. into a public utility for purposes of the P.W.A. Rather, E.R.H. remains what it is, simply an outside contractor."

¶ 20    The court directed E.R.H. to provide the documents sought by the Department within 30 days; however, "[p]ursuant to the agreement of the parties and [the] Court's Order of January 7, 2011," E.R.H. was given 30 days from the date of the amended order in which to file an amended motion to reconsider "and/or" appeal. Pursuant to an extension of time granted by the circuit court, E.R.H.'s motion to reconsider the amended order was timely filed on April 1,

2011. On September 23, 2011, the circuit court filed a lengthy memorandum order, addressing E.R.H.'s numerous objections and arguments, reiterating much of the reasoning set forth in its amended order of February 16, 2011, and ultimately denying E.R.H.'s motion to reconsider the amended order. E.R.H.'s notice of appeal was filed on October 18, 2011.

¶ 21    The appellate court reversed, concluding that E.R.H. *was* a public utility, exempt from the Wage Act. 2012 IL App (4th) 110943, ¶¶ 24, 31. In reaching that conclusion, the appellate court first found that the definition of "public utility" in section 3-105(a) of the Utility Act should apply to the Wage Act: "While application of the definition of section 3-105(a) of the Utility Act is not mandatory, the Labor Department has failed to show why it should not apply." 2012 IL App (4th) 110943, ¶ 20. The court acknowledged a belated Department argument that subsection (b)(1) of section 3-105 *excluded* the municipality and its "operating agent," *i.e.*, E.R.H., from "public utility" status (2012 IL App (4th) 110943, ¶ 21), but disregarded that argument, stating, without analysis:

> "Regardless of the reason for the exclusion, we find no reason why the exclusion would exist in the context of the Wage Act. Accordingly, section 3-105(b)(1) of the Utility Act does not remove defendant from the definition of the 'public utility' in the context of the Wage Act." 2012 IL App (4th) 110943, ¶ 21.

The appellate court went on to find, "[e]ven absent the Utility Act's definition, [E.R.H.] meets the definition of a public utility" under two general dictionary entries. See 2012 IL App (4th) 110943, ¶ 25, 28 (citing Black's Law Dictionary 1686 (9th ed. 2009), and Merriam-Webster's Collegiate Dictionary 942 (10th ed. 2000)).

¶ 22    In support of its conclusion that E.R.H. is an exempt "public utility company," the appellate court recited certain documentary evidence presented in the circuit court. The appellate court noted that the parties' agreement acknowledged, at the outset, "the Village was responsible for maintaining and operating the potable water facility and water infrastructure that served the Village"; however, the court observed their contract delegated partial responsibility for selected functions to E.R.H.:

> "Under the Agreement, [E.R.H.] would maintain and operate the facility and certain segments of the infrastructure. The Agreement contained 25 numbered paragraphs and detailed what was the responsibility of defendant and what remained the responsibility of the Village." 2012 IL App (4th) 110943, ¶ 26.

¶ 23    The appellate court noted that among the duties delegated to E.R.H. was the responsibility to comply with the guidelines established by the Illinois Environmental Protection Agency. 2012 IL App (4th) 110943, ¶ 26. In that regard, the appellate court pointed to the Village water department's exemplary record of fluoridation compliance, and an Illinois House of Representatives resolution recognizing E.R.H.'s owner for being named operator of the year by the Illinois Potable Water Supply Operators Association for his work at the Village treatment facility. See 2012 IL App (4th) 110943, ¶ 27. According to the appellate court, "[t]he fact the Village still remained the named entity with the agency," and that "the Village remained the owner of the facility," did "not alter the fact [E.R.H.] was the party responsible to the agency." 2012 IL App (4th) 110943, ¶ 29.

¶ 24    Moreover, the appellate court considered it inconsequential that no evidence of record indicated E.R.H. was regulated by the Illinois Commerce Commission as a "public utility." The court acknowledged E.R.H.'s admission, in its amended objections to the Department's request for production of documents, that no documents exist evincing communication between E.R.H. and the Commerce Commission; however, the appellate court observed that E.R.H., on appeal, claimed it *did* submit *a document* from the Commerce Commission in response to the request to produce, "but that document is not included in the record on appeal" (2012 IL App (4th) 110943, ¶ 27)—for which the appellant is responsible. Regardless, the court noted it had previously recognized that "a company need not be presently regulated by the Illinois Commerce Commission to be a utility in fact" (2012 IL App (4th) 110943, ¶ 23 (citing *Danville Redipage, Inc. v. Illinois Commerce Comm'n*, 87 Ill. App. 3d 787, 788 (1980))) and the court stated, E.R.H. "should be regulated by the Illinois Commerce Commission, if it is not already" (2012 IL App (4th) 110943, ¶ 29).

¶ 25    The appellate court further found it significant that "the contract [with the Village] does not indicate [E.R.H.] could treat water customers differently or refuse to serve certain ones," and that E.R.H. was contractually "required to deal with the public in certain circumstances," as refutation of the Department's argument that E.R.H. "only provided services to the Village." 2012 IL App (4th) 110943, ¶ 30.

¶ 26                                ANALYSIS

¶ 27    The parties agree, and we find, that *de novo* review applies to the questions before us, as they involve issues of statutory construction. See *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 15.

¶ 28    The first and foremost question for our consideration is whether E.R.H. qualifies as a "public utility company" for purposes of the exemption set forth in section 2 of the Wage Act. Although a working definition of that term in the Wage Act would have been helpful, as would some clear indication as to the reason for the exemption—to the extent it would inform our interpretation—the legislature has provided neither. The parties do not posit a reason for the exemption. Our own research, though limited, has uncovered nothing that would definitively inform our interpretation of the term. We have found no correlative provision in the prevailing wage statutes of other jurisdictions. Confronted with this quandary, the appellate court turned to the Utilities Act and dictionaries for guidance.

¶ 29    In the former respect, we note that appellate panels have recognized limitations in importing definitions from other statutes, since the context in which a term is used obviously bears upon its intended meaning. See *Christ Hospital & Medical Center v. Illinois Comprehensive Health Insurance Plan*, 295 Ill. App. 3d 956, 961 (1998); *Navlyt v. Kalinich*, 125 Ill. App. 2d 290, 295 (1970). Even when two statutes share nearly identical definitions, there can be critical differences in context, or limiting language elsewhere in one statute, that qualifies the term in question. *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 111 (2005).

¶ 30    In this case, the appellate court imported the definition of a "public utility"—which is not literally consonant with the term "public utility company," as employed in the Wage Act—from the Utilities Act. The broad definition of "public utility" in the Utilities Act appears

- 7 -

to have been intended to be generously inclusive so as to designate a wide range of persons and entities that would be subject to the regulatory jurisdiction and supervision of the Illinois Commerce Commission. See 220 ILCS 5/3-105(a) (West 2008). As broad as that definition of "public utility" is, the legislature has specified it does *not* include: "public utilities that are owned and operated by any political subdivision *** or municipal corporation of this State, or *** are owned by such political subdivision *** or municipal corporation and operated by any of its lessees or operating agents." 220 ILCS 5/3-105(b)(1) (West 2008).

¶ 31    The appellate court in this case adopted the definition of "public utility" in subsection (a) of section 3-105 of the Utilities Act without any significant analysis as to its applicability to the Wage Act, and without any meaningful discussion of the exclusion set forth in subsection (b), which would clearly apply to the Village's water department and E.R.H., the Village's "operating agent." See 2012 IL App (4th) 110943, ¶ 21 ("Regardless of the reason for the exclusion, we find no reason why the exclusion would exist in the context of the Wage Act.").

¶ 32    The definitional distinction is important, in the context of the Utilities Act, because it serves to identify those who will be subject to the Utilities Act, and comprehensive regulation by the Illinois Commerce Commission, and those who will not, *i.e.*, "public utilities that are owned and operated by any political subdivision *** or municipal corporation of this State, or *** are owned by such political subdivision *** or municipal corporation and operated by any of its lessees or operating agents." 220 ILCS 5/3-105(b)(1) (West 2008). The exclusion of municipalities from general regulation under the Utilities Act was acknowledged by this court long ago in *Springfield Gas & Electric Co. v. City of Springfield*, 292 Ill. 236, 240 (1920): "Municipal corporations *** are expressly excepted from the terms of and provisions of the Public Utilities act *** and in a very emphatic manner ***." Thus, if we apply the definition of "public utility" from the Utility Act, without derogation, neither the municipality nor its "operating agent," E.R.H., comes within its purview. We see no reason why transposition of the definition from the Utilities Act into the Wage Act, for use there, should remove the definitional exclusion.

¶ 33    The appellate court also employed the following definition of "public utility" from Black's Law Dictionary:

> " 'A company that provides necessary services to the public, such as telephone lines and service, electricity, and water. • Most utilities operate as monopolies but are subject to governmental regulation. *** 2. A person, corporation, or other association that carries on an enterprise for the accommodation of the public, the members of which are entitled as a matter of right to use the enterprises's facilities.' " 2012 IL App (4th) 110943, ¶ 25 (quoting Black's Law Dictionary 1686 (9th ed. 2009)).

¶ 34    Two distinguishing characteristics are immediately apparent: E.R.H. has not been the entity subject to governmental regulation, and the "facilities" involved here are not those of the corporate "enterprise," *i.e.*, E.R.H. We find the former distinction much more significant than the latter. In our view, governmental regulation of utilities—or lack thereof—is a key component of the appropriate analysis.

¶ 35    The exception in the Wage Act, for work "done directly by any public utility company," has been in the Wage Act from the beginning. 1941 Ill. Laws 703, 704 (eff. July 1, 1941).

However, in the original version of the Act, the legislature apparently felt compelled to employ language tying the exception unmistakably to work "done directly by any public utility company *pursuant to order of the commerce commission or other public authority*, whether or not done under public supervision or direction." (Emphasis added.) 1941 Ill. Laws 703, 704 (eff. July 1, 1941). In 1961, when the Act was revised, the emphasized language was deleted, leaving the pertinent exemptive text, referencing work "done directly by any public utility company, whether or not done under public supervision or direction," *i.e.*, the Act's present form. 820 ILCS 130/2 (West 2008). We do not know why the change was made, but one might well speculate that the deleted language was considered redundant in light of subsequent text referencing instances of work "done under public supervision or direction," and the reality, with the rise of utility regulation, that work "not done under public supervision or direction" would nonetheless at some point be subject to the scrutiny of the Commerce Commission, which, in addition to regulating public utilities subject to its jurisdiction, has authority over utility rates. At this juncture, we state the obvious: lower labor costs for public utilities in the construction of public works would, theoretically, allow for lower utility rates.

¶ 36  Municipal utilities have always been subject to different rules. As this court stated in *Springfield Gas & Electric Co.*: "[T]he Municipal Ownership Act is a complete act within itself, authorizing cities to acquire, own and operate public utilities within their borders and to regulate the same and fix rates and charges ***." *Springfield Gas & Electric Co.*, 292 Ill. at 242. The authority to do so survives to this day. See 65 ILCS 5/11-117-1(1), (4), (5) (West 2008) (providing that a municipality may "(1) acquire, construct, own and operate within the corporate limits of the municipality any public utility ***[,] (4) fix the rates and charges for the product sold and the services rendered by any such public utility[,] and (5) make all needful rules and regulations in relation thereto"). In short, municipal utilities have a degree of independence and flexibility insofar as they can, within rather broad statutory guidelines, set their own rates and charges to reflect their costs.

¶ 37  At one point in the history of the Wage Act, the legislature did attempt to apply the Wage Act's provisions to the construction of public works by *employees* of municipalities—in addition to the municipalities' contractors—whether the work performed was governmental or proprietary. This court, in *City of Monmouth v. Lorenz*, 30 Ill. 2d 60, 66-67 (1963), struck down that part of the legislation that imposed upon the municipalities an obligation to pay prevailing wages to the municipalities' own employees, finding that part of the act "violate[d] the equal protection clause of both the fourteenth amendment to the Federal constitution and section 22 of article IV of the Illinois constitution." This court then concluded: "Deletion of the amendments will leave [the Wage Act] substantially as originally enacted by which it was made applicable to public bodies when engaged in construction of public works *by contract*." (Emphasis added.) *City of Monmouth*, 30 Ill. 2d at 67.

¶ 38  *Monmouth* still stands as the applicable law. The result, as the Department points out, is "the Wage Act treats public works done directly by public utility companies the same as public works done directly by public bodies." The same can be said of those with whom they contract. Contractors who perform construction work for public utility companies, and those who

perform similar work for municipal utilities, are both subject to the provisions of the Wage Act.

¶ 39 That E.R.H. *is* a contractor, rather than a "public utility company," is apparent when one applies the thoughtful, multifactor analysis of the circuit court. Based on the evidence before it, the circuit court found the following: (1) the Village owned the potable water facility and infrastructure, and the agreement between the Village and E.R.H. specifically acknowledged that "the Village is responsible for maintenance and operation of the Potable Water Facility and water infrastructure which serves the Village"; (2) the "Village of Bement Water Department (not E.R.H.) has been recognized by the Illinois Environmental Protection Agency and the Illinois Department of Public Health for achieving the highest standard of compliance with the Illinois Fluoridation Act"; (3) the Village "has sometimes" contracted out some, but not all, of its responsibilities to E.R.H.; (4) the Village supplies the public with water and there "is no suggestion that E.R.H. charges the public for the water as would a public utility"; (5) E.R.H. was not regulated by the Illinois Commerce Commission or any other state agency. The court concluded:

> "The Village, by contracting out some of its responsibilities, but only some, does not transform E.R.H. into a public utility for purposes of the P.W.A. Rather, E.R.H. remains what it is, simply an outside contractor."

¶ 40 We agree with the circuit court, based on the totality of the factors cited in its amended order. The preamble of the parties' agreement unequivocally states that "the Village is responsible for the maintenance and operation of the Potable Water Facility and water infrastructure which serves the Village." Though E.R.H.—specifically identified throughout as the "contractor"—"agreed to fulfill all requirements set forth under the applicable laws and regulations for the operation of such facility," the Village clearly retained some responsibilities with respect to operation and maintenance of the facility, and it was the party ultimately responsible to the public and to any pertinent regulatory agencies. Customers paid *the Village*, which maintained those payments in a special fund. The contract did not give E.R.H. the authority to deal with customers in the manner required, pursuant to statute (see 220 ILCS 5/8-306 (West 2008) (special provisions relating to water and sewer utilities)), of "water utilities" providing service to the public. E.R.H. did not assume all-inclusive responsibility for maintenance of the Village's facilities, and it assumed even less with respect to the utility's business operations. To the extent that it performed some, the parties included a provision by which the Village could monitor E.R.H.'s correspondence with the Illinois Environmental Protection Agency, if any, a provision obviously inserted in the agreement to ensure compliance.

¶ 41 We find irrelevant certain minor items of "evidence" the appellate court mentioned in paragraph 27 of its opinion. We would emphasize, first, that the entity that actually received the "certificate of commendation" issued by the Illinois Department of Public Health and the Illinois Environmental Protection Agency was the "Bement Water Department," not E.R.H. The appellate court also referenced as "other evidence" the fact that E.R.H.'s owner and vice president received recognition, via resolution in the Illinois House of Representatives, for being named operator of the year by an industry association. See 2012 IL App (4th) 110943,

¶ 27. We fail to see the relevance of the resolution to the question of whether E.R.H. is or is not a "public utility company" within the context of the Wage Act.

¶ 42    Finally, in the same paragraph, dealing with "other evidence," the appellate court acknowledged that E.R.H., in its "amended objections to the Labor Department's first request for the production of documents, *** admitted no documents of communication between it and the Illinois Commerce Commission exist." Notwithstanding that admission, the appellate court appeared to give some credence to E.R.H.'s bare assertion on appeal, unsupported by the record, that it "did submit a document from the Illinois Commerce Commission in response to the request to produce," when the appellate court observed: "[I]t appears defendant [E.R.H.] should be regulated by the Illinois Commerce Commission, if it is not already (defendant argues it is, but the documentation is not included in the appellate record)." 2012 IL App (4th) 110943, ¶ 29.

¶ 43    To the extent that the appellate court considered the possibility that E.R.H. was a regulated entity, without supporting evidence, in arriving at its conclusion that E.R.H. was entitled to an exemption as a "public utility company," the court erred. Despite conflicting authority as to whether governmental regulation of an entity bears upon a determination of its status as a public utility company (compare *Mississippi River Fuel Corp. v. Illinois Commerce Comm'n*, 1 Ill. 2d 509, 514 (1953) (lack of regulation by the Commerce Commission "persuasive" as to whether the entity falls within the purview of the Public Utilities Act), with *Eagle Bus Lines, Inc. v. Illinois Commerce Comm'n*, 3 Ill. 2d 66, 71 (1954) (business need not be presently regulated by the Commerce Commission to be in fact a public utility)) we believe, in *this* context, where E.R.H. is attempting to claim an exemption under the Wage Act as a "public utility company," lack of evidence that it was considered the regulated entity by *any* governmental agency—be it the Commerce Commission, the Illinois Environmental Protection Agency, the Illinois Pollution Control Board, or any other agency—is relevant and properly considered in conjunction with other pertinent evidence.

¶ 44    The Department sought the production of documents evincing regulation of this nature early on, suggesting that they would "help prove or disprove Respondent's contention that it is a public utility company." E.R.H., at least initially, objected to their production. We do not know what was ultimately produced because it was not made a part of the record on appeal. We *do* know that the circuit court made the specific finding that E.R.H. was not regulated by the Illinois Commerce Commission or any other state agency. Nothing of record contradicts that finding. It was the duty of E.R.H., as the appellant, to present the reviewing court with a sufficiently complete record to support its claim of error. See *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003). E.R.H. has not done so.

¶ 45    In sum, in view of the totality of the circumstances, E.R.H. does not qualify as a "public utility company" entitled to the exemption under the Wage Act.

¶ 46    In a seemingly related, ill-defined argument, E.R.H. cursorily claims it is not subject to the requirements of the Wage Act because:

> "E.R.H. is not in the construction business, it is operating and maintaining the potable water and sewerage systems and infrastructure for the Village of Bement. Repair and maintenance work are necessary to maintain the operation of the systems

and infrastructure but this work cannot be considered 'public works' because E.R.H. is doing so in conjunction with its operational requirements."

This seems to us merely a repackaged argument that E.R.H. is exempt because it is a "public utility company," within the purview of the Wage Act, operating the municipal utility's facilities—a contention we have already rejected. No one is suggesting that E.R.H.'s other contractual activities are subject to the provisions of the Wage Act, but E.R.H. cannot, reasonably, argue that other work performed under its contract with the Village renders it immune for work that clearly falls within the description of work subject to the Wage Act. The Act defines "public works" broadly as "all fixed works constructed by any public body," and specifies that "construction" includes "any maintenance, repair, assembly, or disassembly work performed." 820 ILCS 130/2 (West 2008). We believe the "repair" of lines buried in the ground qualifies as construction of "fixed works" under the Act.

¶ 47    E.R.H. next contends that it "does not have to pay prevailing wage on projects supported by special funding since special funds are not public funds as defined by the Prevailing Wage Act." We note, in passing, in its answer to the Department's complaint for adjudication of civil contempt, that E.R.H. raised as a defense that it "is a public utility company performing work at the supervision of a public entity and *paid in part by public funds*. Therefore, [the Department] has no jurisdiction over this matter." (Emphasis added.) E.R.H. *now* argues that the "emergency repairs and maintenance of water and sewerage systems that E.R.H. has worked on relevant to this case have been completely paid for out of special funding," *i.e.*, "the Village's Water Operation and Maintenance Fund Account," which, E.R.H. asserts, "is not public funding." E.R.H.'s new position is untenable.

¶ 48    The legislature has provided that revenue derived from the operation of a municipal water-supply system "shall be set aside as collected and deposited in a special fund designated as a municipal water fund for the particular locality. The fund shall be used only for the purpose of paying the cost of operating and maintaining the water-supply system, improvement or extension, providing an adequate depreciation fund, and paying the principal and interest on the bonds issued by the municipality under Section 11-129-9 for the purpose of constructing or acquiring the system, improvement or extension." 65 ILCS 5/11-129-11 (West 2008).

¶ 49    Although the Prevailing Wage Act does not define the phrase "public funds," a suitable definition can be found in the Public Funds Investment Act, which defines "public funds" as "current operating funds, special funds, interest and sinking funds, and funds of any kind or character belonging to or in the custody of any public agency." 30 ILCS 235/1 (West 2008). The legislature adopted a very broad definition of "public agency," which includes, *inter alia*, "cities, towns, villages," and "public water supply districts." 30 ILCS 235/1 (West 2008). Obviously, the payments of water customers that are "in the custody of" the Village, and maintained in its "special fund," meet the definition of "public funds," in this case the "operating funds" from which the contractor, E.R.H., is paid. Hence, E.R.H.'s construction work on the Village's infrastructure was paid for out of "public funds."

¶ 50    Finally, in an "argument" that occupies approximately one page of its brief, and is devoid of citations to the record, E.R.H. contends that the subpoena in this case "was *** not lawfully

issued for a number of reasons." It cites one case (*Martin v. Garde*, 195 Ill. App. 3d 25 (1990)), which cites two others (*People ex rel. Bernardi v. Lawrence & Ahlman, Inc.*, 105 Ill. App. 3d 470 (1982); *United States v. Powell*, 379 U.S. 48 (1964)), without discussion of the facts or the legal principles involved in any of those cases, stating only "there are procedures that Petitioner must follow before this Court can enforce an administrative subpoena." Then, after a brief recitation of this Court's Rule 204(a)(2) (Ill. S. Ct. R. 204(a)(2) (eff. Dec. 16, 2010)), and citation to section 2-204(1) of the Code of Civil Procedure (735 ILCS 5/2-204(1) (West 2008)), E.R.H. concludes:

> "Here, Petitioner completely failed to comply with these rules. First, the subpoena was not properly noticed or served upon E.R.H. The subpoena was served upon Charles Morgan, outside legal counsel for E.R.H. Mr. Morgan is neither the registered agent, nor is he a corporate officer, director or employee of E.R.H. Therefore, service of the subpoena on him was ineffective."

No other case authority is cited in support of that assertion. Despite E.R.H.'s suggestion that there are "a number of reasons" why the subpoena was "not lawfully issued," there are no other reasons given.

¶ 51    The Department provides some factual background which, obviously, is not disputed by E.R.H. in its brief. The Department supplies citations to the record to support its version of events. According to the Department, Charles Morgan, who was then E.R.H.'s attorney, wrote a letter to the Department, dated May 21, 2008, stating that E.R.H. would not provide payroll documents requested by the Department because the Wage Act was inapplicable to the repair work for the Village. Morgan's letter concluded: "If you have any questions or need documentation to support our position, please do not hesitate to contact me."

¶ 52    Two days later, the Department issued the subpoena for E.R.H.'s production of documents and served it on Morgan as "Attorney for E.R.H. Enterprises, Inc.," by sending it to him via certified mail, return receipt requested, addressed to his office in St. Louis, Missouri. On June 9, 2008, Morgan confirmed to the Department that he had received the subpoena. E.R.H. then refused to comply with the subpoena and vigorously opposed its enforcement during the circuit court proceedings.

¶ 53    In its amended order of February 16, 2011, the circuit court found that "the Department was specifically directed to communicate with Mr. Morgan," and the court concluded that the subpoena was thus properly served upon E.R.H. by mailing it to Morgan. The court observed that Morgan's receipt of the subpoena was confirmed by a signed return receipt, USPS track and confirm search results, and a conversation between Morgan and Dale Conway, conciliator with the Department.

¶ 54    Because the appellate court found E.R.H. exempt from the Wage Act, it did not address this issue. 2012 IL App (4th) 110943, ¶ 31.

¶ 55    The Department cites the requirement of Rule 204(a)(2) that "[a] deponent shall respond to any lawful subpoena of which the deponent has actual knowledge" (Ill. S. Ct. R. 204(a)(2) (eff. Dec. 16, 2010)) in support of its argument that E.R.H.—which does not dispute that it had actual knowledge of the subpoena—was required to respond. The Department submits that

requirement is consistent with federal authorities holding that allegedly improper service will not preclude enforcement of a subpoena where the party to which it was directed had actual notice and an opportunity to challenge it in court. The Department distinguishes cases cited by E.R.H.—but which E.R.H. does not discuss—insofar as elements of improper purpose or harassment were suggested in the issuance of those subpoenas, and E.R.H. has made no such claim here.

¶ 56     As our appellate court has aptly observed, a reviewing court is not simply a depository into which a party may dump the burden of argument and research. *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 720 (2010); *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009); *Engle v. Foley & Lardner, LLP*, 393 Ill. App. 3d 838, 854 (2009). E.R.H., the party challenging this aspect of the circuit court's judgment—which ruled the subpoena enforceable—cites, without meaningful reasoning or argument, inapplicable cases that speak only to allegations of improper purpose or harassment in the issuance of the subpoenas there at issue. A court of review is entitled to have the issues clearly defined and to be cited *pertinent* authority. A point not argued or supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(h)(7), (i) (see Ill. S. Ct. R. 341(h)(7), (i) (eff. Feb. 6, 2013); *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010) ("Both argument and citation to relevant authority are required. An issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of the rule.")). Failure to comply with the rule's requirements results in forfeiture. *Vancura*, 238 Ill. 2d at 369-70.

¶ 57     We could excuse E.R.H.'s forfeiture, were we so inclined (see generally *People v. Thompson*, 238 Ill. 2d 598, 612 (2010)), but we find no compelling reason to do so here. Judicial review of an administrative subpoena is generally limited to a consideration of the constitutionality of the statute, whether the contemplated agency proceedings are included within the statutory authority, the reasonableness of the demand, and the relevance of the information sought. *Scott v. Ass'n for Childbirth at Home, International*, 88 Ill. 2d 279, 296 (1981); *Illinois Crime Investigating Comm'n v. Buccieri*, 36 Ill. 2d 556 (1967). None of those considerations suggests that further review of this claim is indicated.

¶ 58     For the foregoing reasons, we reverse the judgment of the appellate court, and affirm the judgment of the circuit court.

¶ 59     Appellate court judgment reversed.

¶ 60     Circuit court judgment affirmed.