2022 IL App (1st) 210694-U

SECOND DIVISION
November 22, 2022

No. 1-21-0694

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| SAMANTHA BLACK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | 2019-L-2604 |
| | ) | |
| VALLUVAN JEEVANANDAM, DOUGLAS | ) | Honorable |
| RICHARDSON, ABIGAIL IRVINE, | ) | Daniel Kubasiak, |
| THE UNIVERSITY OF CHICAGO, and THE | ) | Judge Presiding. |
| UNIVERSITY OF CHICAGO DIVISION OF | ) | |
| BIOLOGICIAL SCIENCES, DEPARTMENT OF | ) | |
| SURGERY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Court correctly dismissed amended complaint, as plaintiff did not timely exhaust administrative remedies before suing defendants in circuit court, and individual defendant could not be held personally liable for acts attributable to his employer.

¶ 2    Litigation via the Illinois Human Rights Act can be difficult, even treacherous,

considering that some miscues can be fatal for a plaintiff. This case, unfortunately, is an

example.

¶ 3     Plaintiff, Samantha Black, claims she was sexually harassed while on the job at the University of Chicago's Department of Surgery, which is in its Biological Sciences Department. Plaintiff, a physician's assistant, says that the person in charge of training her sent her sexually harassing text messages. When she turned down his advances, he excluded her from training opportunities. She reported the harassment to administrators, but Dr. Valluvan Jeevanandam, one of the defendants here, began to disparage her to his colleagues. Eventually, the University asked her to leave the hospital or risk being terminated. When she refused to leave, the University fired her, purportedly for bad performance. She believed she was the victim of retaliation.

¶ 4     This triggered a mess of litigation, often with the wrong parties, in the wrong forum, at the wrong time, and with the wrong claims. Eventually, Plaintiff tried to sue the University of Chicago, Jeevanandam, and two university administrators, Douglas Richardson and Abigail Irvine, in circuit court for violating her civil rights. When the dust settled, the circuit court dismissed plaintiff's claims, largely because she did not exhaust the administrative remedies available to her under the Human Rights Act. We agree and affirm.

¶ 5                                    BACKGROUND

¶ 6     We gather the following from the record, and because this case was dismissed at the pleading stage, we take the allegations in the amended complaint as true and draw all reasonable inferences in favor of plaintiff. *Krozel v. Court of Claims*, 2017 IL App (1st) 162068, ¶ 13.

¶ 7     Plaintiff, a physician's assistant, was hired by the University of Chicago's Department of Surgery on October 13, 2017. Tim Wombacher was assigned to help train her, and plaintiff and Wombacher frequently texted back and forth. Wombacher's texts eventually went beyond work topics and included several sexually harassing and explicit messages. Plaintiff rebuffed his

advances, which caused Wombacher's tone to shift. He began to tell Black that she shouldn't "get too comfortable" in her job because she might not be at the hospital very long. Wombacher also began to exclude plaintiff from the operating room and effectively stopped training her.

¶ 8 In January 2018, plaintiff reported Wombacher's sexual harassment to Abigail Irvine, the Section Administrator in the department. Irvine later reported the harassment to Douglas Richardson, the department's Executive Administrator.

¶ 9 In February 2018, and after plaintiff had reported the harassment to Irvine and Richardson, Dr. Valluvan Jeevanandam, the Chairman of the Cardio-Thoracic Surgery Department at the University, began to disparage plaintiff to her colleagues, telling other surgeons to exclude plaintiff from surgeries because her job performance was poor. Plaintiff, however, received positive feedback from other coworkers and thus alleges that Jeevanandam harbored a grudge against her for reporting Wombacher's behavior. Jeevanandam, who worked with Wombacher on a daily basis, continued to disparage plaintiff, at one point scolding her for poor work she did on a patient, even though another person in the room believed plaintiff had done a good job.

¶ 10 Meanwhile, Irvine asked plaintiff if she would consider relocating to Riverside Hospital in Kankakee, approximately 70 miles from where plaintiff lived. Plaintiff never requested the transfer and wanted to continue working in Hyde Park. Plaintiff began to feel like she was being punished for reporting the sexual harassment. The matter came to a head on March 2, 2018, when Richardson sent plaintiff an ultimatum: accept a small severance and resign or be terminated. Plaintiff refused to quit, and on March 25, 2018, the University fired plaintiff, allegedly for poor performance.

¶ 11 This triggered a long series of charges and complaints, which we discuss in detail

because they explain the disposition of this appeal.

¶ 12    On May 15, 2018, plaintiff filed charges of sexual harassment and retaliation with the Illinois Department of Human Rights (the Department) against Jeevanandam, the University of Chicago Medical Center (UCMC), and Sharon O'Keefe, president of the UCMC. Plaintiff, however, did not file charges against the University, Irvine, or Richardson. On September 18, 2018, Jeevanandam filed a response to the charges, denying that he sexually harassed or retaliated against her and likewise denying that plaintiff worked for the UCMC (though he did not specify the entity for whom plaintiff did work).

¶ 13    On January 4, 2019, the Department dismissed the charges against Jeevanandam and O'Keefe. The Department said that, because plaintiff did not allege that Jeevanandam or O'Keefe personally sexually harassed her, those charges could not stand. The Department dismissed the retaliation charges as well, reasoning that plaintiff was pursuing charges of retaliation against the UCMC, and the Illinois Human Rights Act ("the Act") did not allow a charging party to name an individual as personally liable when also attacking an official action of her employer. After this, only the charge against the UCMC remained pending.

¶ 14    In February 2019, plaintiff's counsel reached out to the Department investigator who was looking into plaintiff's claim, as there appeared to be confusion over the identity of plaintiff's employer and whether the correct employer had been named in the charges. Counsel did not believe that the UCMC was an entity separate and distinct from the University. He asked, however, for the investigator to send him "a technical amendment to change Respondent to UCMC," even though UCMC was already the respondent in the charge. The investigator later responded and told counsel that the Department was trying to determine who the correct respondent was and that a technical amendment could be made during or after a fact-finding

4

conference in the case. Plaintiff never sought to amend her charge and add the University as a respondent, however.

¶ 15    On March 11, 2019, plaintiff filed a two-count complaint in the circuit court of Cook County, naming Jeevanandam, O'Keefe, and the UCMC as defendants and alleging sexual harassment and retaliation. On April 4, 2019, she amended the complaint, this time naming Jeevanandam, Irvine, Richardson, the University, and the University's Division of Biological Sciences, Department of Surgery (the BSD). Plaintiff dropped the UCMC and O'Keefe from the suit.

¶ 16    Five days later, on April 9, the Department dismissed plaintiff's charges against the only remaining respondent, the UCMC. The Department concluded that the UCMC was not plaintiff's employer as the Act defines it. Rather, plaintiff was an employee of the University; the University and the UCMC are two separate legal entities with their own human resources departments, and the UCMC cannot make employment decisions for employees of the University. The Department also found that Wombacher, Irvine, and Jeevanandam were also employees of the University, not the UCMC.

¶ 17    Back in the circuit court, the defendants moved to dismiss the amended complaint in July 2019. Plaintiff voluntarily dismissed the BSD with prejudice because it was not a legal entity that could be sued and was instead part of the University.

¶ 18    On October 19, 2019, the circuit court dismissed the amended complaint without prejudice against the remaining defendants. In doing so, the court determined that plaintiff had failed to exhaust administrative remedies against the University, Irvine, and Richardson, as the Act requires. As for the count of retaliation against Jeevanandam, the court noted that the Act does not allow retaliation claims to be brought against individual employees unless the

retaliation is personally motivated or done without the knowledge or consent of the employer.

¶ 19     On November 14, 2019, plaintiff filed new charges with the Department, naming for the first time the University itself in a claim of sexual harassment, along with a count of retaliation against Jeevanandam.  The Department dismissed both charges in August 2020, again determining it lacked statutory authority to hear them. The Department noted that the sexual harassment charge was filed 655 days after the last incident of harassment occurred, and that the retaliation charge had been filed 599 days after it allegedly occurred. The Act requires that such charges be brought within 300 days of the incident for the Department to have jurisdiction to investigate them; since neither were, the charges were dismissed. The Department dismissed the charges against Jeevanandam for the same reason it had in 2019, again finding he could not be personally liable under the Act.

¶ 20     In September 2020, plaintiff refiled an identical copy of the original complaint in circuit court naming the UCMC, Jeevanandam and O'Keefe as the defendants. A month later, plaintiff refiled the amended complaint that named Jeevanandam, Irvine, the University, and the University's Division of Biological Sciences Department of Surgery.

¶ 21     Defendants moved again to dismiss the suit, this time with prejudice, arguing that plaintiff had failed to exhaust the available administrative remedies because she failed to bring a timely charge against the University with the Department. Jeevanandam moved to dismiss the charge for the same reasons it was dismissed previously, specifically that he could not be held individually liable for retaliation absent evidence he was personally motivated or that it was done without the University's knowledge or consent.

¶ 22     The circuit court agreed and dismissed the complaint with prejudice. It discussed the lengthy procedural history of the case and noted that plaintiff did not file a timely charge with

the Department against the University, meaning plaintiff did not avail herself of her available administrative remedies and exhaust them. So the Act did not give the circuit court subject-matter jurisdiction to hear her case. It also dismissed the counts against Jeevanandam because plaintiff did not allege he was personally motivated to retaliate against her, or that his alleged retaliation was done without the University's consent or knowledge. This appeal followed.

¶ 23                                    ANALYSIS

¶ 24                                  I. Notice of Appeal

¶ 25     In her notice of appeal, plaintiff appeals the court's order of "May 21, 2019" that dismissed her amended complaint. There is no order of any kind on that date. The court's judgment order of dismissal was on May 21, *2021*. It is clear from the briefing on appeal, however, that plaintiff is challenging this May 21, 2021 judgment, and it is equally apparent that defendants understood the appeal to be in regard to that May 2021 judgment. Since it is clear to all concerned what plaintiff intended to appeal, and defendants were not prejudiced in any way, we will chalk up the faulty notice of appeal to a scrivener's error and deem our jurisdiction proper. See *In re Marriage of Crecos*, 2015 IL App (1st) 132756, ¶¶ 17-18.

¶ 26                        II. Motion to Strike and Dismiss Appeal

¶ 27     Defendants ask us to dismiss this appeal, claiming that plaintiff's opening brief flagrantly violates Illinois Supreme Court Rule 341 (eff. Oct. 20, 2020). As defendants note, our supreme court's rules are not mere suggestions; they are mandates. *See Perona v. Volkswagen of America, Inc.*, 2014 IL App (1st) 130748, ¶ 21; *Burmac Metal Finishing Co. v. West Bend Mut. Ins. Co.*, 356 Ill. App. 3d 471, 478 (2005). If an appellant's brief violates the rules, we may dismiss the appeal without ever reaching the merits. *In re Jacorey S.*, 2021 IL App (1st) 113427, ¶ 17.

¶ 28     The purpose of these rules is to require parties to make clear and orderly arguments so

7

that we may properly ascertain the issues involved. *U.S. Bank Trust National Ass'n v. Junior*, 2016 IL App (1st) 152109, ¶ 17. We are entitled to have the issues clearly defined and with citations to pertinent authority. *People ex rel. Illinois Dept. of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56. We are "not simply a depository into which a party may dump the burden of argument and research." *Id.*

¶ 29    We agree that plaintiff's brief has several shortcomings in terms of compliance with Rule 341. For example, her Statement of Facts is mostly a multi-page, single-spaced quotation of the complaint in the circuit court. While Rule 341 allows quotations of two or more lines to be single-spaced, "lengthy quotations are not favored and should be included only where they will aid the court's comprehension of the argument." Ill. S. Ct. R. 341(a) (eff. Oct. 1, 2020). Reproducing the entire complaint is an abuse of this limited privilege and does the opposite of aiding our comprehension.

¶ 30    The Argument section is largely devoid of citations to the record, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) and leaving us to comb the record to locate the sources of her arguments. See *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 15. And plaintiff cites no more than three cases in her entire brief. "[I]t is a rudimentary rule of appellate practice that an appellant may not make a point merely by stating it without presenting any argument in support." *Housing Authority of Champaign County v. Lyles*, 395 Ill. App. 3d 1036, 1040 (2009).

¶ 31    That said, striking a party's brief and dismissing an appeal is a harsh sanction that is appropriate only when the rule violations hinder our review. *See Gruby v. Department of Public Health*, 2015 IL App (2d) 140790, ¶¶ 12-13. And doing so would not just punish counsel but plaintiff. So we will not strike the brief or dismiss the appeal.

¶ 32                          III. Circuit Court's Dismissal of Claims

¶ 33    The amended complaint was dismissed pursuant to section 2-619(a)(1) of our Code of Civil Procedure. 735 ILCS 5/2-619 (West 2020). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts other affirmative matters that defeat the claim. *Goral v. Dart*, 2020 IL 125085, ¶ 27. The motion also admits all well-pleaded facts in the complaint as true, as well as any reasonable inferences that can be drawn from them. *Id.* Subsection (a)(1) allows the court to dismiss a complaint when it lacks jurisdiction over the subject matter of the action. 735 ILCS 5/2-619(a)(1) (West 2020). Our review of a section 2-619 dismissal is *de novo*. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009).

¶ 34    Among its many goals, the Illinois Human Rights Act ("the Act") protects those who, like plaintiff, believe they have been sexually harassed in their jobs and/or subjected to retaliation for resisting or speaking out about the harassment. 775 ILCS 5/2-101 *et seq.* (West 2020). The Act creates two administrative bodies to carry out its goals: the Illinois Department of Human Rights (the Department), and the Illinois Human Rights Commission (the Commission). *See* 775 ILCS 5/5-101 *et seq* (West 2018); 775 ILCS 5/8-101 *et seq* (West 2018).

¶ 35    The General Assembly empowered the Department, among other things, to receive and investigate charges of human rights violations because its specialized expertise would allow it to efficiently investigate complaints involving civil rights. *Castaneda v. Illinois Human Rights Commission*, 132 Ill. 2d 304, 322-23 (1989). The Commission is tasked with adjudicating allegations of unlawful discrimination, and the legislature intended to vest the Commission with the authority and ability to decide all matters regarding civil rights violations. *See id.* at 322; *Cruz v. Department of Human Rights*, 2022 IL App (1st) 211276-U, ¶ 27 (Department's role is investigative, while Commission's is adjudicative).

¶ 36    The Act is the exclusive source for redress of civil rights violations; except for limited exceptions not relevant here, the Commission is vested with exclusive authority, at least initially, over the subject of an alleged civil-rights violation. *Weatherly v. Illinois Human Rights Commission*, 338 Ill. App. 3d 433, 437 (2003). Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of a civil-rights violation other than as set forth in the Act. 775 ILCS 5/8-111(D) (West 2020).

¶ 37    Thus, a court may only exercise subject-matter jurisdiction over a civil-rights claim that arises under the Act if the aggrieved party has first exhausted the available administrative remedies in the Act. See *Castaneda*, 132 Ill. 2d at 308. Said differently, if a party sues in circuit court for a civil-rights violation before she has exhausted her administrative remedy against that defendant, the suit is subject to dismissal for lack of subject-matter jurisdiction. *Id.*

¶ 38    Plaintiff's claims of sexual harassment and retaliation in the workplace fall under Article 2 of the Act. See 775 ILCS 5/2-101 *et seq.* (West 2018). Article 7A lays out the procedures for the filing and investigation of such claims. *Id*. § 7A-101 *et seq*. Under section 7A, a party who believes her civil rights have been violated must file a charge with the Department within 300 days of the alleged violation. *Id*. § 7A-102(A)(1). The charge must "be in such detail as to substantially apprise any party properly concerned as to the time, place, and facts surrounding the alleged civil rights violation." *Id.* § 7A-102(A)(2).

¶ 39    The Department then conducts a full investigation to determine whether substantial evidence exists to sustain the claim. *Spencer v. Illinois Human Rights Comm'n*, 2021 IL App (1st) 170026, ¶ 30; 775 ILCS 5/7A-102(D)(2) (West 2018). If the Department finds a lack of substantial evidence, it dismisses the charge, and the complainant may seek review of that determination before the Commission. *Spencer*, 2021 IL App (1st) 170026, ¶ 30; 775 ILCS

5/7A-102(D)(3) (West 2018). The complainant may also sue in circuit court within 90 days of that dismissal. 775 ILCS 5/7A-102(D)(3) (West 2018). (There are similar procedures in place if the Department determines that substantial evidence exists to sustain the claim. See *id.* §7A-102(D)(4). But that scenario is not relevant here.)

¶ 40   With that in mind, we turn to the claims against defendants here, starting with the University. Plaintiff did not follow the path described above—that is, she did not sue the University after receiving a determination (favorable or otherwise) from the Department. She filed suit in the circuit court against the University *before ever filing a charge* against the University with the Department. The circuit court thus correctly found, the first time plaintiff sued the University in circuit court, that plaintiff had failed to exhaust her administrative remedy against the University before filing suit in state court. See *Castaneda*, 132 Ill. 2d at 308.

¶ 41   Plaintiff complains that the Department should have allowed her to amend her initial charge, which incorrectly named the UCMC as her employer, to name the University as a respondent. But she never *asked* the Department to amend her original charge to name the University. Her lawyer sent an email to the Department investigator suggesting he might wish to amend the charge to name the UCMC as a respondent—a typo, obviously, because the UCMC was already the respondent—but it was incumbent on plaintiff to seek leave to do so. Had she done so, she likely would have been allowed to relate her claims against the University back to her original complaint date, making them timely. See 56 Ill. Adm. Code § 2520.360(a) (1994) ("A charge may be amended to cure technical defects or to set forth additional facts or allegations related to the subject matter of the original charge, and such amendments shall relate back to the original filing date.").

¶ 42   The bigger point, however, is that, if plaintiff believed that the Department somehow

wronged her by not allowing her to make an amendment that she never asked to make—her brief implies that the Department investigator may have led her astray—the remedy was to appeal the Department's determination to the Commission with that very complaint about the Department's investigator. But plaintiff did not appeal the Department's determination and thus allowed any complaint she had with the Department to die on the vine. Instead, having never named (or even attempted to name) the University before the administrative body, she simply leapfrogged to state court, naming the University for the first time in a lawsuit in the circuit court.

¶ 43    The circuit court obviously could not allow that suit against the University to stand, given that plaintiff had not exhausted her administrative remedy against the University. But the court dismissed the claims against the University without prejudice, granting plaintiff leave to refile them in circuit court if and when she first exhausted her administrative remedy.

¶ 44    Unfortunately, by the time plaintiff finally pursued that administrative remedy against the University, filing a new charge with the Department on November 14, 2019, it was far too late. Plaintiff alleged that the sexual harassment ended on January 18, 2018. So she had until November 14, 2018 to file a charge against the University. The November 2019 charge against the University was untimely by a year.

¶ 45    As such, the Department was required to dismiss plaintiff's charge against the University. See *Vulpitta v. Walsh Construction Co.*, 2016 IL App (1st) 152203, ¶ 26 (compliance with time requirements for filing charge with Department "is a condition precedent to the right to seek a remedy" before Commission and, if plaintiff "did not originally file them with the Commission on time, he is precluded from pursuing them in the circuit court."); *Weatherly*, 338 Ill. App. 3d at 437 (300-day window limitations period is mandatory; failure to timely file charge mandates dismissal of claim before Commission). And for that same reason, when plaintiff then returned to

circuit court, refiling her claims against the University, the circuit court was required to dismiss the claims for lack of subject-matter jurisdiction, as plaintiff had failed to exhaust her administrative remedy in a timely fashion.

¶ 46    We thus uphold the circuit court's dismissal of the claim against the University in the amended complaint.

¶ 47    For the same reason, the circuit court did not have subject-matter jurisdiction to hear the claims against Irvine and Richardson. Plaintiff never filed *any* administrative charges against those individuals with the Department. The first time they appeared in the legal proceedings in this case was in the amended complaint in circuit court. So these claims, too, were properly dismissed for failure to exhaust administrative remedies.

¶ 48    That leaves Jeevanandam, the only person against whom plaintiff arguably did file a timely charge with the Department. The Department dismissed the charge against him the first time around because Jeevanandam could not be held personally liable under the Act when acting within the scope of his employment, unless there was evidence the retaliation was personally motivated or done without the knowledge and consent of the University—and the charge against Jeevanandam made no such allegations. *See Watkins v. Office of the State Appellate Defender*, 2012 IL App (1st) 111756, ¶ 37. As the Department noted, when a supervisor retaliates against an employee in the name of the employer, the aggrieved employee must charge the *employer* with retaliation, not the supervisor individually. *Id.*; see *Anderson v. Modern Metal Products*, 305 Ill. App. 3d 91, 101-02 (1999).

¶ 49    Plaintiff then sued in circuit court, as noted previously, first naming Jeevanandam in her amended complaint on April 4, 2019. But the circuit court dismissed that claim, agreeing with the Department that Jeevanandam could not be sued personally for actions taken within the scope

13

of his employment based on the allegations in the amended complaint.

¶ 50    Plaintiff then filed a second charge with the Department against Jeevanandam (at the same time she charged the University for the first time), raising the same retaliation allegations she had originally made. And like her claims against the University, by this point her charge was time-barred, coming far after the 300-day time window. Not to mention that her claim once again failed because plaintiff was required to sue the employer, not the individual employee, for the acts alleged. *Watkins*, 2012 IL App (1st) 111756, ¶ 37; *Anderson*, 305 Ill. App. 3d at 101-02.

¶ 51    So when plaintiff then returned to circuit court with her refiled amended complaint, the circuit court dismissed the claims against Jeevanandam for both of those reasons—Jeevanandam could not be sued individually for the actions alleged, and her second charge against Jeevanandam was time-barred, depriving the circuit court of subject-matter jurisdiction. The circuit court was clearly correct on both counts.

¶ 52    In sum, the circuit court properly dismissed the claim against the University because plaintiff did not timely exhaust her administrative remedy. The claims against Irvine and Richardson were properly dismissed because plaintiff never made any attempt whatsoever, timely or otherwise, to exhaust her administrative remedy against them. And the claim against Jeevanandam was correctly dismissed both for failure to timely exhaust administrative remedies and because Jeevanandam could not be sued individually for his alleged actions. We affirm the circuit court's judgment in its entirety.

¶ 53                                    CONCLUSION

¶ 54    The judgment of the circuit court is affirmed.

¶ 55    Affirmed.